**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

**PATRICK GUILLORY**,

                                           Plaintiff,

        - v -                                          Civ. No. 9:13-CV-1353
                                                                      (MAD/RFT)

**M. OVERBAUGH**, *Lieutenant; Greene Correctional Facility*;
**ERIC GUTWEIN**, *Hearing Officer; Greene Correctional Facility*;
**JOHN DOE**, *Correction Officer; Greene Correctional Facility*;
**CAPUTO**, *Sgt.*,

                                          Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

**PATRICK GUILLORY**
Plaintiff, *Pro Se*
09-B-0714
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

**HON. ERIC T. SCHNEIDERMAN**          **CATHY Y. SHEEHAN, ESQ.**
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants Overbaugh,
Caputo, & Gutwein
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Patrick Guillory brings this action, pursuant to 42 U.S.C. § 1983, alleging that Defendants conspired to, and ultimately did, beat him in retaliation for filing grievances and lawsuits, failed to protect him, and denied him due process at a prison disciplinary hearing. *See*

*generally* Dkt. No. 13, Second Am. Compl.[1]  Now before this Court is Defendants' Partial Motion to Dismiss Plaintiff's claims: (1) against all Defendants in their official capacities; (2) that he was threatened and/or verbally harassed by Defendants Overbaugh, Caputo, and Doe; (3) that Defendants Overbaugh, Caputo, and Doe conspired to beat him up in retaliation for filing lawsuits and grievances; and, (4) that Defendant Gutwein deprived him of due process at a Tier III disciplinary hearing.[2]  *See generally* Dkt. No. 24-1, Defs.' Mem. of Law.  We recommend that Defendants' Motion be **GRANTED** in part and **DENIED** in part in accordance with our Report-Recommendation below.

## I. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing

---

[1] On January 22, 2014, this Court directed the Clerk of the Court to file Plaintiff's Amended Complaint (Dkt. No. 6) and his "Supplemental Pleading" (Dkt. No. 10) together as Plaintiff's Second Amended Complaint. Dkt. Nos. 12, Text Order, dated Jan. 12, 2014 & 13, Second Am. Compl.

[2] Defendants have not moved to dismiss Plaintiff's excessive force, failure to protect, and retaliation claims against Defendants Overbaugh, Caputo, and Doe.  Accordingly, we do not discuss the merits of these claims.

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Scherm3erhorn*, 373 U.S. 746, 754 n.6 (1963); *see also Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S.

at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Second Amended Complaint.

## II.  DISCUSSION

### A.  Background

The following facts are derived from Plaintiff's Second Amended Complaint.

On or about September 17, 2013, Plaintiff was moved from Wyoming Correctional Facility ("WCF") to Greene Correctional Facility ("GCF"). Second Am. Compl. at p. 4.[3] On September 20, Plaintiff filed a grievance against unidentified prison officials for their failure to provide him with Kosher meals during his transfer. *Id.* at p. 5. On September 22, while in unit F-1 at approximately 7:15 p.m., Plaintiff witnessed Corrections Officer V. Carlson[4] "almost beat to death three . . . inmates" named Spratt, Thomas, and Gibbs. *Id.* Between September 23 and 25, Plaintiff wrote affidavits and letters to prison authorities and outside agencies explaining the beatings that he

---

[3] The Second Amended Complaint is not sequentially paginated, therefore, we refer to the page numbers automatically assigned by the Court's Case Management Electronic Case Filing system.

[4] Officer Carlson is not a Defendant in this action.

witnessed. *Id.* at p. 6. On September 26, Plaintiff filed a grievance regarding the beatings. *Id.* at p. 10 & Ex. D, Grievance, dated Sept. 26, 2013.[5]

On September 27, 2013, at approximately 9:55 p.m., while Plaintiff was in his bed, an incident between Corrections Officer Devoe[6] and Inmate Foster occurred; Plaintiff did not witness the incident. *Id.* at p. 10.

On October 1, 2013, at approximately 2:00 p.m., Plaintiff was taken, by an unknown corrections officer, to Defendant Lieutenant Overbaugh's office. *Id.* at pp. 14–15. Plaintiff was questioned about the September 27 incident, and gave a written statement regarding the beatings he witnessed on September 22. *Id.* at p. 15. Defendant Overbaugh then questioned Plaintiff about the substance of litigation he was engaged in, and took out copies of a state court lawsuit Plaintiff was pursuing against "Prison Officials" as well as a copy of a federal lawsuit Plaintiff was pursuing against Sgt. Potter.[7] *Id.* at pp. 15–16. Defendant Overbaugh then ordered Defendant Sergeant Caputo to "take this dirt bag for a tune-up!!!" *Id.* at p. 16. Defendant Overbaugh explained to Defendant Caputo that Plaintiff was suing the commissioners, Sgt. Potter, "'running his mouth during depositions snitching on corrections officers[,]'" and "'writing too many grievances and filing too many lawsuits.'" *Id.* at p. 17. Plaintiff was then taken into a small box where, on Defendant Overbaugh's orders, Defendant Doe physically assaulted the Plaintiff as Defendants Overbaugh and Caputo watched from a few feet away. *Id.* at pp. 17–22.

---

[5] Plaintiff included sixty-six pages of Exhibits with his "Amended Pleading." *See* Dkt. No. 10. Given that he references these documents repeatedly and has expressly stated his intent to incorporate these documents into his pleadings, we construe them as part of his Second Amended Complaint. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

[6] Officer Devoe is not a Defendant in this action.

[7] Sgt. Potter is not a Defendant in this action.

On October 2, 2013, Plaintiff was issued a Tier III misbehavior report charging him with attempting to cause a riot, violent conduct, out of place, interference, and creating a disturbance. *Id.* at p. 23 & Ex. U, Misbehavior Report, dated Oct. 1, 2013. According to that report,

> [o]n 9/27/13 at about 9:55 PM Officer Devoe was assaulted by inmate Foster . . . on the porch area of F-1 dorm. During this assault Inmate Carter . . . began to instigate other inmates to fight with responding staff and get their keys. Inmate . . . Guillory ran into the day room and attempted to push the front door open to assault the officers struggling with inmate Foster. Inmate Guillory was positively identified by the use of a photo-array.

*Id.*

"Shortly thereafter," Sgt. Harris[8] advised Plaintiff that he would be acting as his inmate assistant during the course of his disciplinary hearing. Plaintiff asked Sgt. Harris to gather the following witnesses: Defendant Overbaugh; Sgt. Harris; Corrections Counselor Jacob Dobbs; and, inmates M. Carter, R. Emanual, T. Spratt, Williams, and Vallejo. *Id.* at pp. 23–24.

Plaintiff's disciplinary hearing was conducted by Defendant Gutwein on October 7 and November 13, 2013. *Id.* at p. 32 & Ex. Z, Disciplinary Hr'g Disposition. Defendant Gutwein refused to call any of Plaintiff's inmate witnesses.[9] *Id.* at p. 32. At the conclusion of the hearing, Plaintiff was sentenced to serve one year in the solitary housing unit ("SHU").[10] *Id.* at Ex. Z,

---

[8] Sgt. Harris is not a Defendant in this action.

[9] Although Plaintiff claims that Defendant Gutwein refused to call any of his witnesses, it is apparent that this is not entirely accurate. *See infra* Part II.E.

[10] Plaintiff was also sentenced to twelve (12) months loss of good time credits. Second Am. Compl. at Ex. Z. However, Plaintiff waived his right to contest the loss of these credits in order to proceed with the instant action without first seeking a reversal or expungement of his disciplinary conviction. *See id.* at pp. 16–17 & 20; *see also Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)) (holding "that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.").

Disciplinary Hr'g Disposition.

## B. Sovereign Immunity

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.*, 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994)); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540.

Here, Plaintiff seeks monetary and declaratory relief from Defendants. *See* Second Am. Compl. at p. 41. Accordingly, we recommend that Defendants' Motion to Dismiss be **GRANTED** solely with respect to Plaintiff's requests for monetary relief against all Defendants in their official capacities.

### C. Verbal Threats

To the extent that Plaintiff intended to assert a separate claim against Defendants Overbaugh and Caputo based solely on their alleged statements that Plaintiff needed to be tuned-up, such a claim must fail.[11] *See, e.g., Munoz v. Monpetit*, 2013 WL 1414933, at *8 (N.D.N.Y. Feb. 28, 2013) (citing, *inter alia*, *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010), for the proposition that "[v]erbal harassment, in and of itself, does not rise to the level of a constitutional violation").

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's claim that Defendants Overbaugh and Caputo verbally harassed or threatened him.

### D. Conspiracy

Construed liberally, Plaintiff has alleged that Defendants Overbaugh, Caputo, and Doe

---

[11] It does not appear to the Court that Plaintiff intended to raise such claim; however, Defendants raise this point in their Memorandum of Law, *see* Dkt. No. 24-1, Defs.' Mem. of Law, at pp. 7–9, and therefore, in an abundance of caution, we consider it here.

conspired with one another to "tune-up" Plaintiff in retaliation for having filed grievances, lawsuits, and complaints. Second Am. Compl. at pp. 16–22. Defendants now argue that this claim fails as a matter of law, because, under the "intracorporate conspiracy doctrine," Defendants were legally incapable of conspiring together. Defs.' Mem. of Law at pp. 3–4.[12] For the reasons that follow, we disagree, and recommend that Defendants' Motion be **DENIED** with regard to Plaintiff's conspiracy claim.

Pursuant to the intracorporate conspiracy doctrine, "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Nassau Cnty. Employee "L" v. Cnty. of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004) (internal citations and quotation marks omitted). This doctrine has been applied to cases involving "allegations of conspiratorial conduct between a public entity and its employees." *Id.*; *see also Anemone v. Metro. Transp. Auth.*, 419 F. Supp. 2d 602, 603-04 (S.D.N.Y. 2006) (noting that in the absence of any controlling authority to the contrary, the court would continue to apply the intracorporate conspiracy doctrine to § 1983 conspiracy claims); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 469 n.108 (N.D.N.Y. 2009) (surveying cases). However, "an exception to the doctrine applies when individual employees are pursuing personal interests wholly separate and apart from the entity[.]" *Anemone v. Metro. Transp. Auth.*, 419 F. Supp. 2d at 604 (internal quotation marks and citations omitted).

Accepting, as we must, Plaintiff's allegations that the Defendants conspired to beat him in retaliation for filing lawsuits, grievances, and complaints, as true, we cannot conclude that Defendants are entitled to intracorporate immunity. *See Medina v. Hunt,* 2008 WL 4426748, at*9

---

[12] Defendants do not argue, and therefore we do not address, whether Plaintiff failed to plausibly allege that Defendants Overbaugh, Caputo, and Doe actually conspired to deprive him of his First Amendment rights.

(N.D.N.Y. Sept. 25, 2008) (denying defendants' intracorporate immunity defense where plaintiff plausibly alleged defendants "knew they were not acting . . . in the interest of DOCS but were acting in their own interests" when they allegedly conspired to assault him, and did so despite the fact that plaintiff did not present a threat to them); *see also Benitez v. Ham*, 2009 WL 3486379, at 19 (N.D.N.Y. Oct. 21, 2009) (citing *Medina v. Hunt*). Here, Plaintiff alleges that the Defendants actively discussed "tuning" him up solely because he had exercised his right to file grievances and complaints, and despite the fact that he did not present any threat to them or others.

Accordingly, we recommend that Defendants' Motion be **DENIED** with respect to Plaintiff's conspiracy claim against Defendants Overbaugh, Caputo, and Doe.

### E. Due Process

Plaintiff alleges that Defendant Gutwein violated his right to due process at his Tier III disciplinary hearing by, *inter alia*: (1) denying his right to call witnesses and present documentary evidence; (2) failing to issue a written notice of extensions; (3) failing to disclose confidential information; (4) basing his determination on insufficient evidence of misconduct; and, (5) failing to make an independent assessment of the confidential informant's credibility. Second Am. Compl. at p. 38.

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2)

state statute or regulations. *Id.* With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. at 478.

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999)

*-11-*

(citations omitted). Nevertheless, the Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215, F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Edmonson v. Coughlin*, 1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life"); *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative sentences of 125-288 days are "relatively long" and therefore necessitate "specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant"). Accordingly, the court must "make a fact-intensive inquiry" that would examine the actual conditions of confinement within SHU. *Palmer v. Richards*, 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d at 65. If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under *Sandin*. *Id*.

Plaintiff alleges that as a result of the disciplinary hearing at issue, he was sentenced to 365

days of SHU time. Compl. at Ex. Z. On its own, such an allegation is more than sufficient to plausibly establish that Plaintiff enjoyed a protected liberty interest. *See, e.g., Thomas v. Calero*, 824 F. Supp. 2d 488, 501 (S.D.N.Y. 2011) (finding 291 days of SHU confinement was sufficient to implicate a liberty interest).

Having established the existence of a liberty interest, Plaintiff has plausibly alleged that he was entitled to certain minimum requirements of due process. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A prisoner placed in disciplinary segregation must be provided (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) written statement as to the evidence relied upon and the reasons for the disciplinary action. *Id.* at 564-66; *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986); *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (quoting *Hewitt v. Helms*, 459 U.S. at 476).

Here, Plaintiff has made a host of allegations attacking the sufficiency of the process that he received prior to and during the disciplinary hearing at issue. Prominent among the many others is Plaintiff's allegation that he was denied the right to call four witnesses without any valid reason.

Although Plaintiff maintains that he was denied the right to call <u>any</u> witnesses, it is apparent from documents incorporated by reference to his Second Amended Complaint that this is not entirely accurate. On November 13, Plaintiff was provided with a written notice explaining why certain requests for witnesses were denied; specifically, it was noted that: (1) Defendant Overbaugh was called to testify, but his testimony was taken outside of Plaintiff's presence because it contained confidential information; (2) Counselor Dobbs was not called as a witness because his testimony "regarding receiving a phone call" was not relevant; (3) "NA Cole" was not called as a witness

because his testimony "regarding previously being on crutches" was deemed irrelevant; (4) Sgt. Harris was not called as a witness because his testimony regarding providing Plaintiff inmate assistance was deemed irrelevant. Absent from these documents, as well as the record before us,[13] is any explanation for Defendant Gutwein's decision to deny Plaintiff's request to call fellow inmates M. Carter, R. Emanual, T. Spratt, Williams, and Vallejo as witnesses in his defense. *Id.* at Ex. AA, Witness Interview Notice, dated Nov. 11, 2013.

The Supreme Court has noted that "[c]hief among the due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Thomas v. Calero*, 824 F. Supp. 2d at 501 (quoting *Ponte v. Real,* 471 U.S. 491, 496 (1985)). To be sure, this right is not unlimited, and it is clear "that prison officials must be accorded the discretion necessary to keep a hearing within reasonable limits and to refuse to call witnesses when summoning them may create a risk of reprisal or undermine authority." *Id.* (citing *Wolff v. McDonnell,* 418 U.S. at 566). For example, a hearing officer may deny a prisoner's request to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir. 1991). And, although it is certainly possible that Defendant Gutwein had a good faith basis for excluding Plaintiff's inmate witnesses from testifying, if we accept as true Plaintiff's allegations, as we must, we must conclude at this early stage that Plaintiff

---

[13] The Court is aware that Plaintiff submitted an additional ninety pages of Exhibits in his Supplemental Reply to Defendants' Motion to Dismiss, including a transcript of Plaintiff's Tier III disciplinary hearing. Dkt. Nos. 30 & 30-1. However, the documents contained therein are neither certified copies nor documents that Plaintiff referred to or relied upon in his Second Amended Complaint. Accordingly, we have not considered the contents of these documents for purposes of deciding the instant Motion.

has plausibly alleged a due process violation.[14] *See Thomas v. Calero*, 824 F. Supp. 2d at 502 (finding that, for purposes of a 12(b)(6) motion to dismiss plaintiff's due process claim based on the defendants alleged failure to call certain witnesses, where there was "no indication in the record, nor any assertion in defendant's documents, that calling Sgt. Kasper or CO Smith would have created a risk to personal safety or undermined institutional authority" the court would not "presume any valid reason, either related to personal safety, irrelevance or waste of time" on behalf of defendants).

Accordingly, we recommend that Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's due process claim against Defendant Gutwein.

### E. John Doe

Plaintiff has asserted claims against a "John Doe" Defendant in this action. Plaintiff is advised that the U.S. Marshals cannot effect service on a "John Doe" Defendant. In the event that Plaintiff wishes to pursue his claims against this Defendant, he shall take reasonable steps to ascertain his/her identity. Should such individual be identified, Plaintiff may seek leave of the Court to add such individual, by name, as a Defendant to this lawsuit. Plaintiff is further advised that if this individual is not timely served, this action will be dismissed as against him/her.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 24) be **GRANTED** in part and **DENIED** in part as follows:

---

[14] At this juncture, in light of our recommendation that a plausible due process violation has been alleged, we do not make any evaluation as to whether Plaintiff's other grounds in support of his due process claim have merit. Should this recommendation be adopted, all of Plaintiff's alleged grounds for due process violations should be explored during the discovery phase.

1. **GRANTED** with respect to all of Plaintiff's claims for monetary damages against all Defendants in their official capacities;

2. **GRANTED** with respect to any independent claim Plaintiff may have intended to bring against Defendants Overbaugh and Caputo based solely on their alleged use of threatening or harassing language;

3. **DENIED** with respect to Plaintiff's conspiracy claim against Defendants Overbaugh, Caputo, and Doe;

4. **DENIED** with respect to Plaintiff's due process claim against Defendant Gutwein; and it is further

**ORDERED**, that Plaintiff take reasonable steps to identify the John Doe Defendant, and if necessary, make an appropriate motion seeking leave to amend his pleadings to add the proper party; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 7, 2014
Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge